IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No:_____

| ANTONIA ALLEN | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | COMPLAINT |
| GENESYS CLOUD SERVICES, INC. | ) | |
| Defendant. | ) | |

NOW COMES Plaintiff, Antonia Allen, by and through the undersigned counsel, complaining of Defendant, Genesys Cloud Services, Inc., and alleges and says as follows:

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race and color. Plaintiff, Antonia Allen, (hereinafter "Plaintiff" or "Ms. Allen") brings this action to remedy discriminatory employment practices of her employer, Genesys Cloud Services, Inc (hereinafter "Defendant"). Plaintiff alleges that Defendant took adverse action against Plaintiff's employment and created a hostile work environment based on her race and/or color. This Complaint sets out in detail the relevant instances of unlawful discrimination perpetrated by Defendant.

### PARTIES

1. Plaintiff is a citizen of Butner, Granville County, North Carolina, and is employed by Defendant as a technical writer.

2. At all times relevant to this action, Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. §12111(4).

3. At all times relevant to this action, Defendant was Plaintiff's employer within the meaning of 42 U.S.C. §12111(4).
4. Defendant is a California corporation with its principal office in Daly City, San Mateo County, California.
5. Defendant is registered to do business within the State of North Carolina, and has an office located at 4307 Emperor Boulevard, Suite 300, in Durham, North Carolina.
6. Defendant is subject to the personal jurisdiction of this court as they purposely availed themselves of conducting activities within the State of North Carolina. Defendant regularly conducts business and employs citizens of the State of North Carolina from their Durham office and thereby meets the minimum contacts standard set forth in *International Shoe Co. v. Washington. See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 744 (1984); 326 U.S. 310, 315 (1945)).

STATEMENT OF FACTS

7. Plaintiff is an African American female with medium-brown skin.
8. On or about March 26, 2018, Plaintiff was hired by Defendant as a Security Technical Writer.

*2019*

9. On July 18, 2019, Plaintiff notified her supervisor, Lila Bednar that she did not invite Plaintiff to the audit that the rest of the team was invited to.
10. Bednar responded that she was not sure of Plaintiff's status, that the meeting only concerned physical items, and that it did not matter since the meeting was over.
11. Plaintiff and another African American female are the only team members that were excluded.
12. On or about November 8, 2019, Plaintiff contacted Defendant's Human Resources department. Plaintiff left a message for Ian Johnson concerning her being treated differently than her non African American and/or non African American appearing colleagues. Johnson failed to return Plaintiff's call. As a result, Plaintiff ceased her initial discrimination complaint.

13. Upon information and belief, someone from human resources notified Bednar and Eric Cohen, Plaintiff's supervisor later in her employment, about her complaint. As a result, Plaintiff and the other African American female on the team were included in more meeting invitations.
14. On October 4, 2019, David Kenny commented on the group Slack chat that "rednecks are interesting folks."
15. From June 2019 through October 2019, Plaintiff and the other African American female on her team were required to attend a weekly "retro, backlog planning meeting.
16. Two similarly situated compliance members Ajay Purswani, who is upon information and belief an Indian male, and Colleen Townsend, who is upon information and belief a White female, were not required to attend.

*2020*

17. On or about April 28, 2020, Bednar referenced her colleagues, including Plaintiff, as "compliance slaves" in a chat on Slack.
18. On or about June 5, 2020, Cohen posted a message on Slack with a meme and the following comment: "changing my FB photo to #blacklivesmatter sure cut down on (sic) on the bs posts I was getting. I think my friends list shrunk. 😀 ask me if I care 😀".
19. On or about June 6, 2020, Cohen posted the following message: "Reminder, June 19th is Genesys US Holiday. We'll be celebrating freedom from slavery!"
20. In light of Plaintiff's history with Cohen, she believed Cohen's statements, described in paragraphs 18 and 19 herein, to be a racial microaggressions. These statements negatively impacted Plaintiff's ability to do her job, and adversely impacted her mental health.

*2021*

21. In or about October 2021, Eric Cohen, the Vice President of Genesys Cloud Security and Compliance, and the former Head of Cloud Security for Defendant, became Plaintiff's supervisor.

22. On or about October 27, 2021, Plaintiff emailed Human Resources and requested a meeting concerning her and her African American female colleague's concerns that they were being discriminated against due to their race. No one responded to her email.
23. Plaintiff was scheduled to be on vacation from November 15, 2021 through November 16, 2021. Plaintiff was aware that all policies and procedures were supposed to be uploaded to the HITRUST portal prior to her vacation. For more than a week before her vacation, Plaintiff attempted to contact Cohen and have him review the policies and procedures. Cohen never responded.
24. On Friday, November 12, 2021, not even a full business day before Plaintiff was supposed to go on vacation, Cohen responded with comments regarding the policies and procedures. As a result of Cohen's late responses, and demands that Plaintiff edit the documents, Plaintiff was unable to take her preplanned vacation.
25. Prior to the November 12 communication with Cohen, Plaintiff had never received any complaints or negative comments about her work.
26. On or about November 16, 2021, Plaintiff discussed her questions regarding the offered promotion with Cohen and Hellman.
27. On or about November 17, 2021, Plaintiff forwarded a copy of her October 27 email to Hellmann.
28. On November 17, 2021, Plaintiff emailed Kathryn Hellmann, who is, upon information and belief, Defendant's Senior Human Resources Business Partner, and informed her that she was "mentally and emotionally stressed" due to the discrimination, harassment, and mistreatment she was receiving.
29. Plaintiff notified Hellmann that she requested an immediate two-week leave of absence.
30. Plaintiff advised Hellman that she had already been in contact with the benefits team regarding this matter.
31. Hellmann replied and advised Plaintiff to follow up with the benefits team. She also instructed Plaintiff to contact New York Life/Cigna and to fill out and return the leave of absence form she attached. Hellmann explained that Plaintiff would

need a doctor's note that medically released her to return to work. Finally, Hellman asked for clarity about whether the stress Plaintiff described was work-related, and if so, she asked Plaintiff to share the details with her or another colleague from Employee Relations.

32. While Plaintiff did not advise Hellmann that the stress was work related, both Hellman and Bob McIntyre were aware of Plaintiff's complaints of discrimination against Cohen. Moreover, Defendants benefit's department was aware that Plaintiff's increased stress and other mental health concerns were due to work.

33. On or about December 1, 2021, McIntyre responded to the email Plaintiff forwarded to Hellman on November 17. McIntyre asked for additional information concerning her discriminatory treatment. Specifically, McIntyre asked for a description of each occurrence when it occurred and whether there were any witnesses to the incidents.

34. On or about December 2, 2021, Plaintiff responded to McIntyre's email. She expressed her concern that the email was brought to his attention after being brought to the Human Resources department as required. Plaintiff explained the mental and emotional stress and anguish she was experiencing at work and questioned why there was a lack of concern.

35. McIntyre responded and explained his role as an Employee Relations Manager with Defendant's Human Resources Department. McIntyre advised that he was unable to locate the owner of the email identification of Plaintiff's original October 27 email was sent to. He agreed to investigate this matter.

36. On or about December 13, 2021, John Carnell, Defendants Senior Development Manager and Architect asked Plaintiff what her thoughts were on the available position with his department.

37. Initially, Plaintiff advised Carnell that she was not interested in the position because it was not a lateral move, and the job responsibilities were substantially different.

38. Hellman and Cohen informed Plaintiff that she would be terminated unless she accepted one of two options: 1) continue on her current team as a technical writer

and take on additional compliance responsibilities, or 2) accept the full-time position with Carnell.

39. Plaintiff believes Cohen and Hellmann's push for her to move to a different team was because or motivated by her complaints of discrimination against him to Human Resources.

*2022*

40. On or about January 4, 2022, due primarily to the continued discrimination and harassment she faced in the Security and Compliance Department under the management of Cohen, Plaintiff notified Hellmann and Cohen that she decided to accept the technical writer position with Carnell.
41. On or about August 19, 2022, Plaintiff's physician authorized her to return to work working four-hour shifts. Plaintiff's physician advised that Plaintiff be evaluated monthly to determine whether she was fit to return to work full time.
42. Plaintiff was released from short term disability and authorized to return to return to work by her physician.
43. On or about September 8, 2022, New York Life closed Plaintiff's Short Term Disability claim, and ceased providing benefits.
44. On or about September 9, 2022, the United States Equal Employment Opportunity Commission ("EEOC") determined that it would not proceed further with its investigation and informed Plaintiff of her right to sue
45. Upon information and belief, in or about September 2022, Defendant was going to post a new technical writer position on Cohen's team.
46. Upon information and belief, this position, previously occupied by Plaintiff, was not posted once Defendant received notification of Plaintiff's EEOC Complaint.
47. At all times relevant to this action, Plaintiff had positive annual reviews.
48. At all times relevant to this action, Plaintiff did not have any complaints about the work she produced.

49. At all times relevant to this action, Plaintiff did not have any disciplinary infractions with Defendant.
50. At all times relevant to this action, Plaintiff performed her job duties satisfactorily and to the best of her ability.
51. Plaintiff still has not been returned to her full salary despite being cleared to work and her short-term disability ending several months prior to the filing of this action.

FIRST CAUSE OF ACTION
RACE/COLOR-BASED DISCRIMINATION

52. The allegations set forth in paragraphs 1 through 50 are realleged and incorporated by reference herein.
53. Plaintiff is a member of a protected class based on her race and/or color.
54. Plaintiff's job performance was satisfactory as evidenced by:
    a. Positive annual reviews;
    b. Prior to discriminatory treatment by Cohen, no negative feedback or commentary on her work product; and
    c. Plaintiff not having any disciplinary infractions with Defendant.
55. Defendant took adverse action against Plaintiff that it did not take against similarly situated employees who were not members of the protected class when it:
    a. Excluded her from team meetings;
    b. Retaliated against her for making discrimination complaints against Cohen; and
    c. Forced her to move to a different team for no legitimate business purpose or face termination.
56. Furthermore, Plaintiff faces consistent commentary on matters that are directly related to her protected class, including references slaves, the "Black Lives Matter" movement and federal recognition of Juneteenth as a holiday.

## SECOND CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT

57. The allegations set forth in paragraphs 1 through 55 are realleged and incorporated by reference herein.
58. Defendant created, fostered, and facilitated a hostile work environment for Plaintiff.
59. Defendant engaged in unwelcomed conduct when:
    a. Its agent referenced Plaintiff as "compliance slave";
    b. Its agent referenced the Black Lives Matter movement in a discriminatory manner;
    c. Its agent referenced Juneteenth in a discriminatory manner;
60. Defendant's unlawful conduct was based on Plaintiff's race and/or color as evidenced by commentary that was uniquely offensive to African Americans or Black people, and differential treatment of the only two African Americans on Plaintiff's former team.
61. Defendant's conduct was sufficiently pervasive or severe to alter the conditions of Defendant's employment and create a hostile work environment:
    a. Plaintiff was unable to perform her job functions;
    b. Plaintiff's mental health symptoms increased;
    c. Plaintiff was diagnosed with severe depression; and
    d. Plaintiff ultimately had to take a leave of absence.
62. Liability for the conduct of Bednar, Cohen, McIntyre, and Hellmann is imputed to Defendant due to negligent hiring, supervision and/or training of the named employees.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all questions of fact raised in this action.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate monetary relief in excess of $100,000.00;
2. Order Defendant to expunge Plaintiff's employment record as necessary to eradicate the effects of Defendant's discriminatory practices;
3. Order Defendant to make Plaintiff whole by providing compensation for pecuniary losses resulting from the unlawful employment practices described herein;
4. Grant, such relief as the Court, deems necessary and proper in the public interest; and
5. Award Plaintiff her attorney's fees and costs of this action pursuant to Title VII of the Civil Rights Act of 1964.

Respectfully submitted, this the 8th day of December, 2022.

                          THE LAW OFFICE OF NEUBIA L. HARRIS, PLLC
                          ATTORNEYS FOR PLAINTIFF

By:      /s/ Neubia L. Harris
           Neubia L. Harris
           N.C. Bar No.: 42069
           The Law Office of Neubia L. Harris, PLLC
           312 W. Millbrook Road, Ste. 141
           Raleigh, NC 27609
           (919) 526-0500 (telephone)
           (919) 589-3935 (facsimile)
           neubia@neubiaharrislaw.com